Daniel SCAPELLATO, Petitioner,

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (GUARDIAN INDUSTRIES CORP.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 5, 1996.

Decided Feb. 22, 1996.

---

4. Based on our resolution of Petitioner's first issue, we need not address his second issue.

Daniel K. Bricmont, for Petitioner.

James D. Strader, for Respondent.

Before COLINS, President Judge, FLAHERTY, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Daniel Scapellato (Claimant) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's[1] decision dismissing Claimant's reinstatement petition. We affirm.

On October 4, 1988, Claimant suffered a work-related injury to his right eye, during the course of his employment with Guardian Industries (Employer). On January 9, 1989, Claimant underwent two surgical procedures on his right eye, during which a cataract was removed and an intraocular lens was implanted. Claimant received benefits during several closed periods of disability; pursuant to a supplemental agreement, benefits were suspended effective November 3, 1989 upon Claimant's return to work.

On May 22, 1992, Claimant filed a petition for reinstatement alleging that he had sustained the loss of the use of his right eye for all intents and purposes.[2] Employer filed an answer denying Claimant's allegation and the matter was assigned to a referee.

In support of his petition, Claimant testified that, following his work injury and prior to the lens implant, he could not see with his right eye. Claimant stated that he continues to have problems with his right eye, including blurred vision. Claimant also presented the deposition testimony of Frank Cignetti, M.D., who examined Claimant on November 21, 1991. Dr. Cignetti considered the plastic lens inserted into Claimant's eye to be a prosthetic device, designed to take the place of the lens that had been damaged and removed. Dr. Cignetti opined that Claimant has suffered a material loss of the use of his right eye; however, on cross-examination, he

---

1. Workers' compensation judges were called referees prior to August 31, 1993.

2. Claimant sought specific loss benefits for the loss of use of his right eye, pursuant to Section 306(c) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736 *as amended,* 77 P.S. § 513. Where, as here, the eye has been injured but not destroyed, the test to determine whether

compensation should be awarded is whether the eye was lost for all intents and purposes. *Rohm and Haas v. Workmen's Compensation Appeal Board,* 51 Pa.Cmwlth. 184, 414 A.2d 163 (1980). Loss for all intents and purposes will be found where the injured eye does not contribute materially to the claimant's vision in conjunction with the use of the uninjured eye. *Id.*

stated that Claimant's vision following surgery is close to normal.

Norman L. Edelstein, M.D., testified by way of deposition on Employer's behalf. Dr. Edelstein examined Claimant in July of 1991. He explained that the intraocular lens implanted in Claimant's eye is an artificial device which is now a permanent, integral part of the eye. In Dr. Edelstein's opinion, Claimant had not lost the use of his right eye for all intents and purposes following the surgery.

Employer also presented the deposition testimony of Robert C. Arffa, M.D., who had performed the lens implant. Dr. Arffa described the intraocular lens as a plastic-type material which is placed into the eye to replace its natural crystalline lens and stated that this is a permanent procedure.

In his decision, the referee stated that the key issue to be decided was whether or not the surgically implanted lens is a prosthetic device; he concluded that, as used in workers' compensation case law, it was not. The referee found and concluded that, following the surgery, Claimant had not lost the use of his right eye for all intents and purposes and dismissed Claimant's petition.

Claimant appealed to the Board, arguing that the referee erred as a matter of law in determining that the implant was not a prosthetic device and asserting that Claimant's loss of vision must be measured as of a time prior to the insertion of the intraocular lens. The Board disagreed; the Board concluded that the mere fact that a foreign object was inserted during surgery does not mean that its existence should be discounted when determining Claimant's loss of vision in the same way that the use of other "prosthetic devices", such as eye glasses or contact lenses, would be ignored when making this determination.

■ On appeal to this Court,[3] Claimant again argues that the intraocular lens implant is a prosthetic device similar to a contact lens and, thus, Claimant's vision must be evaluated in its uncorrected state, citing *Tesco Tank Center, Inc. v. Workmen's Compensation Appeal Board (Zmarzley)*, 107 Pa. Cmwlth. 469, 528 A.2d 1036 (1987), *petition for allowance of appeal denied*, 519 Pa. 670, 548 A.2d 258 (1988). In *Tesco*, the employer argued that the claimant's vision should be measured with a contact lens in his eye. The court held that where a work-related injury creates the need for a contact lens to restore normal vision, the proper focus in determining whether there is a compensable loss is upon the uncorrected eye. The *Tesco* court stated that:

> [T]o allow use of what is essentially a prosthetic device to negate specific loss in eye injuries would open the door to employing such standards for other prosthetic devices such as hearing aids, artificial limbs, etc. We simply cannot believe that one who is forced to rely upon such an artificial device to replace that which nature has provided has not suffered a specific loss of that body part.

*Id.*, 528 A.2d at 1037–38. Relying on *Tesco*, the court in *Addy Asphalt Co. v. Workmen's Compensation Appeal Board (Sebastianelli)*, 139 Pa.Cmwlth. 593, 591 A.2d 11 (1991), *petition for allowance of appeal denied*, 528 Pa. 618, 596 A.2d 801 (1991), held that the use of a correcting contact lens did not equate with a surgical and/or medical procedure. Thus, the *Addy* court held that, where it was medically determined that surgery was not recommended and the most reasonable course of treatment following a claimant's eye injury was the use of a contact lens, the proper focus was upon the uncorrected eye, i.e., without the use of a contact lens.

In the interim, our Supreme Court decided *Joyce Western Corp. v. Workmen's Compensation Appeal Board (Fichtorn)*, 518 Pa. 191, 542 A.2d 990 (1988), and held that the issue of whether a claimant sustained a specific loss of his eye necessarily includes a determination of whether reasonable medical proce-

---

3. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Pokita v. Workmen's Compensation Appeal Board (U.S.Air)*, 163 Pa.Cmwlth. 97, 639 A.2d 1310 (1994).

dures will restore some portion of the loss of function.

In this case, the Board relied on *Joyce Western* and concluded that Claimant was not entitled to benefits because the loss of the use of the eye had been corrected by a surgical procedure. The Board rejected Claimant's argument that the holding in *Joyce Western* is inapplicable where a foreign substance, or a "prosthesis", is implanted during surgery.

 Initially, we note that the term "prosthesis" or "prosthetic" can be used to describe any "[f]abricated substitute for a diseased or missing part of the body." Stedman's Medical Dictionary 1271 (25th ed. 1990). The courts have also used the term broadly, with regard to artificial legs, *Symons v. National Electric Products, Inc.,* 414 Pa. 505, 200 A.2d 871 (1964), all or part of a knee joint, *Cardyn v. Workmen's Compensation Appeal Board (Heppenstall),* 517 Pa. 98, 534 A.2d 1389 (1987), as well as a device contained in a claimant's shoe, *United States Steel Corp. v. Workmen's Compensation Appeal Board (Elkins),* 32 Pa.Cmwlth. 637, 380 A.2d 512 (1977). Thus, we conclude that a determination regarding the issue of specific loss cannot focus solely on whether a claimant's condition has been remedied with the aid of an artificial device or material.

More important, we believe that the analysis in *Tesco* reflects the courts' desire to avoid an absurd result. In that case, the court refused to measure a claimant's vision as if the contact lens were a permanent part of the claimant's eye. Here, Claimant asks us to measure his vision as if the surgical implant had not been performed.

We concur with the Board that the holding in *Joyce Western* remains applicable, despite the insertion of a "prosthesis" during the surgical procedure. The referee found that, following surgery, Claimant does not have a loss of vision for all intents and purposes. As that finding is supported by substantial evidence, we affirm the decision of the Board.

## ORDER

NOW, February 22, 1996, the order of the Workmen's Compensation Appeal Board, dated April 25, 1995, at No. A93–0473, is affirmed.

FLAHERTY, J., dissents.